144

JORGE R. COLLAZO ET UX., Plaintiffs and Appellees, *v.* JULIO M. CONESA RENOVALES ET UX., Defendants and Appellants.

No. 9940. Argued June 2, 1949.—Decided June 24, 1949.

*Guillermo S. Pierluisi* for appellants. *Raúl Matos* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The fifth clause of the lease executed on March 14, 1945, by Julio M. Conesa Renovales and his wife Gladys Braun, as parties of the first part, in favor of the spouses Jorge R. Collazo and Flor de María Quiñones de Collazo, as parties of the second part, textually copied reads as follows:

"It is expressly agreed between the parties that while the present lease is in force, the lessees shall be entitled to acquire the property leased for the price of $8,500 (house and lots).— It is likewise agreed that the lessors shall insure against fire the building located on the property marked with letter 'A', for a reasonable sum and if the insurance premium, due to the nature of the business established thereon be greater than the usual one, the difference shall be paid by the lessees. Should the lessors have the intention of selling the leased property to another person for a sum in excess of the $8,500 fixed above, as set forth, they shall notify in writing to the lessees by registered mail, the offer made to them, the lessees being bound to decide whether or

not they purchase the property leased for the said sum of $8,500, in the manner set forth above, during the term of thirty days, from the date of receipt of the notice, which decision shall be set forth by registered letter addressed to the owner. Should the said thirty days to accept the offer to sell for $8,500 as set forth above elapse without the lessees accepting it, the owner and/or lessors shall be free to sell the property leased for the price agreed with the person making the offer."

Relying on that clause, Collazo and his wife filed in the District Court of Ponce a complaint wherein, after describing the real property, the subject matter of the lease,[1] and after fully copying the fifth clause mentioned above, alleged that in spite of the agreement and of their having demanded the defendants on repeated occasions to execute the corresponding deed of sale of the described properties, for the agreed price of $8,500, and in spite of their having been willing to forthwith pay the said sum to the defendants, all their efforts had been unsuccessful.

The defendants answered denying some facts and raising questions of law and certain special defenses. After trial was held, the lower court rendered judgment sustaining the complaint in its entirety and ordering the defendants, in accordance with the prayer of the complaint, to execute the corresponding deed of conveyance in favor of the plaintiffs within the term of five days, for the price of $8,500, free from any lien or encumbrance; and that if the defendants failed to do so, the marshal would do so in their name, with costs, plus the sum of $1,000 as attorney's fees.

On appeal, the defendants assign nine errors to the lower court, the first two being that said court erred in overruling the defense that the complaint did not state facts sufficient to constitute a cause of action and in considering that the alleged promise to sell did not lack consideration or price.

---

[1] The properties are described in the deed under letters A and B. The property under letter A consists of a lot with a concrete, brick and stone, one story and zinc-roofed building. The one described under letter B consists of a lot of 140.213 square meters.

Such errors are nonexistent. The complaint, such as it is drafted, states a clear cause of action in favor of the plaintiffs and against the defendants. It conclusively shows that in the lease executed by the defendants in favor of the plaintiffs, the former made to the latter a promise to sell the properties involved therein, and that the latter accepted such promise and are in a position to fulfill the contract, the defendants having refused to do so.

Pursuant to § 1340 of the Civil Code, 1930 ed., "A promise to sell or buy, there being an agreement as to the thing and price, gives a right to the contracting parties to mutually demand the fulfilment of the contract." Such promise to sell plainly exists, and also the agreement of both parties as to the thing and as to the price. Under those circumstances and pursuant to the Section cited above, once the promise is accepted, the contracting parties are entitled to mutually demand the performance of the contract. The defendants argue, however, that the contract is not enforceable because it lacks consideration. In the instant case the lease itself constitutes a good and sufficient consideration for the existence of the contract of promise to sell. Furthermore, the promise to sell contained in the fifth clause of the contract is nothing more than an option granted by the lessors to the lessees. Ossorio y Gallardo defines said contract thus:

"It is a contract by virtue of which the owner of a thing or right grants to another for a fixed term and under certain conditions the exclusive power to acquire or convey it to a third person." (*Enciclopedia Jurídica Española* by Francisco Seix, Vol. 26, p. 41.)

Under the Civil Code the contract of option is fully valid and enforceable. In this connnection the learned textwriter José María Manresa y Navarro, in his *Comentarios al Código Civil Español*, Vol. X, 4th. ed., 1931, p. 61, construing § 1451 of the Spanish Civil Code, the context of which is identical to § 1340 of our Code, expresses himself thus:

"Of course it is noted that the promise may be unilateral or bilateral. The unilateral promise in turn is divided into two: promise to sell and promise to buy. The bilateral promise, of course is mutual, that is, to purchase and to sell.

"*a*) *Unilateral Promise.* This promise may be accepted or not.

"The nonaccepted unilateral promise, whether to purchase or to sell, does not produce any considerable legal effects whatsoever: this is the case of the so-called offer (*policitación*). Of course, this is not the case mentioned in § 1451 of the Code.

"It is from the accepted unilateral promise, whether to purchase or to sell, that legal effects spring. A promises to sell to B a property for a certain price; B accepts the promise. This is a clear case of an accepted promise to sell. Who are bound and to what, from the time the promise is accepted? . . . What has B actually accepted in the above example? The answer is clear: B has accepted the promise, not the fact of the sale with all its consequences. A has voluntarily contracted the obligation to sell to B, if B purchases; B has accepted this obligation; A was free to promise or not to promise, but he promised and his promise passed to a particular person, who accepted. The binding legal obligation was established, B being the pretender and A the obligee . . . This and none other is, in our judgment, the true scope of the unilateral promise to sell merely accepted.

"At first blush it may perhaps seem anomalous that the enforceability of the purchase and sale involved in the promise should remain at the free will of only one of the parties; but, looking into the process creating this legal situation, there is nothing in it that contradicts the fundamental principles of contract, since it has evolved within an atmosphere of the broadest individual freedom. When the act develops from a promise to the true contract of sale because the person to whom the promise was made decides to purchase, then in nowise can it be stated that the enforceability of the contract is at the free will of one of the parties and it is clear that such is the time that must be looked into in order to determine whether the defect which many seek to find in our views exists or not."

*The Enciclopedia Jurídica Española* at the volume and page above cited, referring to § 1451 of the Spanish Civil Code, recites as follows:

"Here the promise is legally acknowledged as a true contract, sufficient in itself; subject, as is subsequently stated in the Code, to the general provisions governing the obligations and contracts. Such contract may have as its subject matter the unilateral promise to purchase or to sell, the other party being free to make its decision; and also it may contain a mutual or bilateral promise to purchase or to sell; the acceptance of the obligation being necessary in all cases in order that the promise may have the scope of a true contract.

"One of the modalities of this contract, is the promise to sell, greatly used among miners and known by the name of contract of option."

■ Under the third assignment the defendants allege that the district court erred in granting the complaint, notwithstanding the fact that it was proved that the plaintiffs violated the obligation to accept defendants' right to build a second story. The parties stated in the sixth clause of the lease that the lessors were entitled to repair, rebuild and enlarge, and also to build a second story to the property described under letter A, provided said acts did not affect or prejudice in any way the laundry business the lessees had established on said premises; that when the lessors should decide to carry out said acts they would reach an agreement with the lessees in order to determine the manner in which said work would be performed. Regarding this point both parties introduced evidence and the court, after weighing it, reached the conclusion that since according to the terms of the contract in order for the defendants to be able to build the second story in the leased property it was necessary for the parties to reach an agreement, and the consent of the lessees had to be previously obtained, and the evidence did not show the existence of such agreement or consent, the contention of the defendants in this regard should be dismissed. The study we have made of the case convinces us that the record contains sufficient evidence to justify the conclusion reached by the lower court as to this point.

■ The fourth error assigned is that the court erred in not considering in its judgment that the parties had desisted from the supposed option by acts subsequent to the contract, without deciding said matter in one sense or the other. The judgment rendered logically shows that the lower court did not believe that the parties had desisted from their contract of option. If it had been of that opinion, it would not have rendered the judgment it did.

■■ The fifth and sixth errors are, in brief, that the district court erred in overruling the sixth defense raised by them, that is, that the plaintiffs at no time showed to be in a position to comply with the terms of the option, since they did not have at the date of the trial at their disposal the sum of $8,500 or had made any tender of payment of that sum to the defendants, or had deposited it in court. In the instant civil action it is prayed that the specific performance of a contract of promise to sell and the execution of the corresponding deed be ordered. Said action is a personal action. *Calderón* v. *Registrar*, 46 P.R.R. 752; *Lange* v. *Honoré*, 47 P.R.R. 206, 210. For the institution of personal actions of that sort the tender of payment and the deposit in court of the sum involved in the contract are not prerequisites to the filing of the complaint. By express provision of § 1340 of the Civil Code the contract of promise to sell entitles the contracting parties to mutually demand the performance of the contract. Section 1077 of the same Code in referring to mutual obligations provides in connection thereto that "the person prejudiced may choose between exacting the fulfilment of the obligation or its rescission. . . ." In the instant case the plaintiffs chose to demand the fulfillment. There is nothing in the law which provides, we repeat, that in order to demand such fulfillment, it is necessary to make a tender or previously deposit in court the price to be paid for the thing involved in the complaint. It suffices that the plaintiff accept the promise to sell and that he be willing and able to fulfill the contract. The allegations and the evidence show

that the plaintiffs not only demanded verbally and in writing from both defendants to perform the agreement, but that the plaintiffs had procured a loan with Banco de Ponce to pay for the properties involved in the action as soon as the deed of sale were executed. Therefore, they alleged and proved not only that they were willing to comply with the terms of the Contract, but also that they were in a financial position to meet the same.[2]

■■ The lower court did not err in not admitting the oral evidence introduced [3] to vary the terms of the written contract.[4] Section 25 of the Law of Evidence (§ 387 of the Code of Civil Procedure) provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section thirty-four, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties."

The rule laid down by § 25, *supra*, is well-known. In American law it is described with the name of parol evidence rule. The theory in which it is grounded is not merely that

---

[2] The case of *United States* v. *Penn Foundry and Manufacturing Company, Inc.*, decided by the Supreme Court of the United States on May 31, 1949, 337 U. S. 198, clearly sets forth the common law rule on the matter.

[3] The oral evidence tending to vary the terms of the deed was conditionally admitted by the court. In its opinion, said court stated that the same was inadmissible, but that if it had been admissible it would not have accorded any credit.

[4] The defendant's contention is that in the fifth clause of the deed they only gave the plaintiffs preference in case they decided to sell to a third person, but never an option.

the instrument is the best evidence of the agreement but that what is embodied in the writing is the actual contract of the parties, no oral evidence being admissible to vary it except in the cases provided in the said Section. *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49; *Morales et al.* v. *Díaz et al.*, 24 P.R.R. 691. See also 6 Harv. L. Rev. 325; 7 Cal. L. Rev. 417; 6 Cal. Jur., p. 261, § 166; 10 Cal. Jur. 919, § 187; 12 Am. Jur. 755–757, §§ 232–234; and 20 Am. Jur. 958, § 1099. The evidence introduced by the defendants did not fall within any of the exceptions prescribed by the Section copied above and the lower court did not err in rejecting the same.

 The defendants also urged that the lower court erred in ordering them to free the real property from any kind of lien. Such error was not committed either. In the deed of lease it is not stated in any manner that the lessees in exercising the right of option, would have to pay in addition to the sum of $8,500, any lien or encumbrances on the properties leased, plus taxes owed.[5] Logic indicates that given the terms in which the promise to sell is drafted the sum of $8,500 was to be paid for the properties, free from any kind of lien.

 The ninth and last error assigned by the defendants is that the lower court erred in granting to the plaintiffs the sum of $1,000 as attorney's fees without it being shown that they were guilty of obstinacy. The granting of attorney's fees is discretionary with the lower court and we are not convinced that in this case there was an abuse of such discretion in granting and fixing said sum. *Figueroa* v. *Picó*, 69 P.R.R. 372; *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330. See also *Gorbea* v. *Santiago*, 67 P.R.R. 595.

The judgment appealed from should be affirmed.

---

[5] In the notation entered by the Registrar of Property at the foot of the deed of lease it is stated that record thereof is denied inasmuch as the properties were not recorded, but only a cautionary notice entered, and that said properties were encumbered by a mention of a mortgage for $2,400 in favor of Milagros Fournier Toro widow of Wellenkamp. Cf. *Mejía* v. *Mouriño*, 68 P.R.R. 614, 616, and *Sánchez* v. *Coll*, 69 P.R.R. 863.